UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTRESS CLOSEOUT CENTER IV,
LLC,

        Plaintiff,                               No. 14-12562

v.                                          District Judge Gerald E. Rosen
                                                 Magistrate Judge R. Steven Whalen

PANERA, LLC,

        Defendant.
_____/

**OPINION AND ORDER**

Plaintiff Mattress Closeout Center IV, LLC ("MCC") has sued Panera, LLC ("Panera"), based on damages to its Rochester Hills, Michigan store resulting from a water leak emanating from Panera, a restaurant that was located next door. MCC claims lost profits as part of its damages, and to that end retained John C. Zerbo, a Certified Public Accountant, as its damages expert. Before the Court is Panera's motion to strike all information pertaining to Mattress Closeout's Bloomfield Hills store, including Mr. Zerbo's report and deposition testimony regarding Bloomfield Hills [Doc. #45].

**I.    BACKGROUND**

In addition to its Rochester Hills store, MCC operates stores in Bloomfield Hills and Wixom. The salient question in this case is how much lost profit the Rochester Hills store suffered as a result of the water damage attributable to Panera. On the supposition that MCC might rely on comparative sales data from its Bloomfield Hills store, Panera sought discovery regarding that location. In July of 2014, Panera served MCC with Requests to Admit, Interrogatories, and Requests to Produce Documents. Request to

Admit No. 12, along with MCC's response, is as follows:

> Please admit that the Plaintiff will/is relying on the financial documentation from Plaintiff's other locations, including Bloomfield Hills and Wixom to support its claim.
>
> **ANSWER:**
>
> Plaintiff admits only that the financial information for the Bloomfield Hills store supports its claim for damages, based on lost sales. By way of further answer, Plaintiff DENIES that its' damages claim relies on the financial information for the Bloomfield Hills store.

In Interrogatory No. 5, Panera asked, and MCC answered as follows:

> Please state the monthly net sales for Plaintiff's Rochester Hills location beginning with the first month the store was opened up to the present day. Additionally, for the same time period please state:
>
> a. The monthly net sales for the Bloomfield Hills Mattress Closeout Center location.
> b. The monthly net sales for the Wixom Mattress Closeout Center location.
>
> **ANSWER:**
>
> For Rochester Hills, see attached. As to Bloomfield and Wixom, Plaintiff objects to this Interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence. By way for further answer, the financial statements for the Bloomfield and Wixom stores are not relevant to Plaintiff's claims or Defendant's defenses."

In Interrogatory No. 6, Panera asked, and MCC answered as follows:

> Please state the monthly net sales for the Bloomfield Hills Mattress Closeout Center location for the first year that the Bloomfield Hills Mattress Closeout Center store was open.
>
> **ANSWER:**
>
> Plaintiff objects to this Interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence. By way of further answer, the net sales for the Bloomfield and Wixom stores are not relevant to Plaintiff's claims or Defendant's defenses.

Notwithstanding these responses, Mr. Zerbo's expert report[1] indicates that he

---

[1] Filed under seal as Defendant's Exhibit F [Doc. #47].

reviewed and relied upon "MCC books and records" for both the Rochester Hills and Bloomfield Hills locations. More specifically, the Index to the Appendix lists the following financial documents that were used in Mr. Zerbo's analysis:

-Rochester Hills Sales by Month for 2013

-Bloomfield Hills Sales by Month for 2013

-Sales and Cost of Goods Sold for 2013

-2013 Schedule C

The documents contained in the Appendix include an Annual Sales Report for the Bloomfield Hills store for January through December, 2013. This Report sets forth, on a month-by-month basis, not only the total income from sales, but sales discounts, returns, and allowances.

In the Report itself, Mr. Zerbo stated that he calculated MCC's lost profit damages by "averaging the impact of the damage period (April, 2013 to August, 2013) to the corresponding period in 2014 in Rochester and the same time period in Bloomfield Hills." Referencing his Exhibits 4 through 7, he compared both the volume of sales per month at Rochester Hills and Bloomfield Hills, and the dollar amount of sales per month at the two stores. *Report*, pp. 3-6.

On March 10, 2015, Mr. Zerbo was deposed.[2] He testified that he reviewed and relied on monthly sales figures from both the Rochester Hills and the Bloomfield Hills stores, and that he compared the two stores to determine lost sales figures. *Zerbo Deposition*, 12-13, 37, 38. He explained that the dollar figure for the sales (as opposed to the figure for profit) was the amount before the cost of goods and other expenses were deducted, a figure that counsel referred to as *gross* sales. *Id*. 16-17. However, he testified

---

[2] Transcript filed under seal as Defendant's Exhibit E [Doc. #46].

that he could have calculated lost profits and lost future income using only the Rochester Hills data:

> Q: Okay. Lost profits and lost future income, as I look through your report you've, at times relied on the sales figures from the Bloomfield Hills store, correct, for 2013?
>
> A: Correct.
>
> Q: Okay. For that figure, those two figures, those two lost profit and lost future income, would you have been able to arrive at those numbers without using the Bloomfield Hills store's sales figures? Could you have done it just with Rochester Hills?
>
> A: Yes. *Id*. 38-39.

But Mr. Zerbo stated that he could not have calculated the lost profit figure that he actually included in his Report without using the Bloomfield Hills sales numbers:

> Q: Okay. But [Rochester Hills] is just a part of your lost profits calculation, correct?
>
> A: That's a part of it.
>
> Q: Okay. You have the other two columns?
>
> A: Yes.
>
> Q: And in those two columns you reference Bloomfield Hills in both columns, correct?
>
> A: That's correct.
>
> Q: Okay. Could you have arrived at those numbers you have in those two columns without relying on Bloomfield Hills data?
>
> A: No. *Id*. 40.

Mr. Zerbo also testified that it was not possible to separate the sales figures for Rochester Hills from Bloomfield Hills in MCC's 2013 tax return, specifically Schedule C. *Id*. 34.

## II. DISCUSSION

Citing Fed.R.Ev. 402's provision that only relevant information is admissible, Panera contends that because MCC denied relying on financial and sales data from its Bloomfield Hills store, and objected to producing that documentation on grounds of relevance, all such information, along with expert opinions based on that information, should be stricken:

> "Therefore, because Plaintiff denied relying on the Bloomfield Hills store date, and because Plaintiff claims the information is irrelevant and thus inadmissible (FRE 402), any and all information related to, relying on, or using the Bloomfield Hills store's data should be excluded uner FRE 402, based upon the Plaintiff's own discovery Answers, which the Defendant relied on. That would include the portions of the Plaintiff's Expert's Report and testimony as it relates to relying on Bloomfield Hills data in any way, and the 2013 Tax Return." *Defendant's Motion* [Doc. #45], ¶ 12.

Characterizing Panera's motion as a "motion for discovery sanctions," MCC argues that Panera has waived this issue because it did not file a motion to compel or otherwise preserve this "discovery" issue. *Response* [Doc. #57], p. 1. MCC also argues that its discovery responses regarding financial information denied relevance only as to "net sales," and the information it provided to its expert related to "gross sales." *Id*. pp. 4-5.

First, MCC incorrectly casts Panera's motion as having been brought as a discovery dispute under Fed.R.Civ.P. 37. A party is not required to contest an opposing party's objection to discovery; it can *accept* the objection at face value. But in doing so, the requesting party is entitled to rely on its opponent's representations and fashion its strategy accordingly as the litigation moves forward. In addition, Fed.R.Civ.P. 36(b) provides that a matter admitted is "conclusively established." These precepts, not Rule 37, are the basis of Panera's motion.

More to the point, MCC's attempt to limit the scope of its responses to "net sales"

is a bit of sleight of hand. It is true that in answer to Interrogatory No. 6, MCC stated that "the net sales for the Bloomfield and Wixom stores are not relevant to Plaintiff's claims or Defendant's defenses." But its answer to Interrogatory No. 5 stated more broadly that "*financial statements* for the Bloomfield and Wixom stores" were not relevant. (Emphasis added). And in Request to Admit No. 12, MCC stated, " Plaintiff DENIES that its' damages claim relies on the *financial information* for the Bloomfield Hills store." (Emphasis added). Yet what did Mr. Zerbo rely on in his expert report and his deposition testimony? *Financial information* for the Bloomfield Hills store, information that MCC told Panera was irrelevant to its claims or Panera's defenses.

Moreover, MCC is not correct in asserting that its expert did not rely on net sales. The term "net sales" is defined as "the total amount the company has brought in from sales, called gross revenue, minus the value of product returns and allowances."[3] Attached to Mr. Zerbo's Report as an exhibit is a spreadsheet showing the annual sales for MCC's Bloomfield Hills store for 2013, on a month-by-month basis. This document clearly reflects not only gross revenue, but has lines for sales returns and allowances, as well as sales discounts. In other words, Mr. Zerbo's Report is in fact based at least in part on *net sales* at the Bloomfield Hills store,[4] a figure that MCC told Panera was irrelevant to its claims or Panera's defenses.

The Court should not condone this type of bait-and-switch tactic. "'Trial by

---

[3] Merritt, *Net Sales or Revenue vs. NetIncome*, http://smallbusiness.chron.com/net-sales-revenue-vs-net-income-59947.html.

[4] If there are no returns and allowances, then net sales would equal gross sales. In his affidavit, Gregory Yatooma, the sole director of Mattress Closeout IV, LLC, repeated the claim that net sales at Bloomfield Hills are not relevant, and asserts that his expert's report was based on gross sales. *Response* [Doc. #47], Exhibit A. It appears that he is confusing the terms "net sales" with "profits," which would generally be net sales minus cost of goods and expenses.

surprise' is not a tactic in civil actions and related discovery proceedings." *Dawson v. Mt. Brighton, Inc.*, 2013 WL 1276555 (E.D. Mich. 2013)(Hood, J.); *In re Barnholdt*, 74 B.R. 760, 763 (N.D.N.Y.1987) (federal discovery rules "were designed to eradicate trial-by-surprise, and arrive at a reasoned search for the truth.")(citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958). Panera's motion to strike will be granted. As ordered below, both MCC's and Panera's experts may produce supplemental reports that do not consider or rely on financial or sales information from MCC's Bloomfield Hills or Wixom stores.

### III. CONCLUSION

IT IS ORDERED that Panera's Motion to Strike [Doc. #45] is GRANTED.

IT IS FURTHER ORDERED all documents relating to MCC's Bloomfield Hills store's financial or sales information that were referenced or utilized in MCC's expert report and in the deposition of MCC's expert, including MCC's 2013 tax return, as well as any conclusions drawn from those documents, are STRICKEN.

IT IS FURTHER ORDERED that, in fairness, any reference to these documents in Panera's expert's report or deposition are likewise STRICKEN.[5]

IT IS FURTHER ORDERED that within 30 days of the date of this Order, MCC may produce a supplemental expert report that uses only the financial and sales data from its Rochester Hills store.[6]

---

[5] In its Reply Brief [Doc. #61], Panera states that its expert relied to a limited extent on MCC's 2013 tax return.

[6] Mr. Zerbo testified that he could calculate lost profits and lost income using only data from the Rochester Hills store. *Zerbo Deposition*, 38-39.

IT IS FURTHER ORDERED that within 30 days of receipt of MCC's expert report, Panera may produce a rebuttal report that uses only the financial and sales data from MCC's Rochester Hills store.

                                      s/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE

Date: March 18, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 18, 2016, electronically and/or by U.S. mail.

                                      s/C. Ciesla
                                      Case Manager